(M.R. 19565)

## IN THE SUPREME COURT OF ILLINOIS

*In re* Collective Bargaining

### ORDER

THIS MATTER, having come before the court upon reconsideration of the supervisory order entered on July 1, 2004;

THIS COURT, having further examined the constitutional implications of proceeding with the implementation of the July 1, 2004, order; and

THIS COURT, having concluded that proceeding with the implementation of the July 1, 2004, order would undermine the separation of powers principles articulated in *Administrative Office of the Illinois Courts v. State & Municipal Teamsters, Chauffeurs & Helpers Union, Local 726*, 167 Ill. 2d 180 (1995);

IT IS HEREBY ORDERED that the July 1, 2004,

order voluntarily recognizing Local 1220, International Brotherhood of Electrical Workers, AFL-CIO, as the bargaining representative for the Court Reporting Services Employees of the Circuit Court of Cook County is VACATED.

Order entered January 25, 2005.

JUSTICE FITZGERALD, dissenting:

No question exists in my mind as to whether the court has the authority to vacate its order of July 1, 2004. The court clearly is empowered to do so. The only question is the wisdom of that decision.

Under the express terms of our prior order, recognition of Local 1220, International Brotherhood of Electrical Workers (IBEW), as the bargaining representative for the Court Reporting Services Employees of the Circuit Court of Cook County, was contingent upon two events: (1) the court reaching a formal written agreement with the IBEW, and (2) additional appropriations. I am dismayed and disappointed that, before we could sit down with the IBEW and attempt to reach an agreement, and before the issue of legislative funding could be addressed, the court has decided to "pull the plug." The stated reason is that implementation of the July 1, 2004, order "would undermine the separation of powers principles articulated in *Administrative Office of the Illinois Courts v. State & Municipal Teamsters, Chauffeurs & Helpers Union, Local 726*, 167 Ill. 2d 180 (1995) [*AOIC*]." This is the same fear expressed by a minority of this court when we entered our prior order. See *In re Collective Bargaining*, 211 Ill. 2d 346, 351-59 (2004) (Freeman, J., dissenting), at 359-64 (Thomas, J., dissenting), at 364-368 (Garman, J., dissenting). Such fear is unwarranted.

As I explained in more detail when I wrote in support of the July 1 order, any agreement between this court and the IBEW would, of necessity, "comply with

the Illinois Constitution, this court's own rules, and this court's prior decisions—including *AOIC*." *In re Collective Bargaining*, 211 Ill. 2d at 349 (Fitzgerald, J., writing in support, joined by McMorrow, C.J., and Kilbride and Rarick, JJ.). Further, nothing in the prior order obligated this court to surrender its authority to the labor relations boards. *In re Collective Bargaining*, 211 Ill. 2d at 349 (Fitzgerald, J., writing in support, joined by McMorrow, C.J., and Kilbride and Rarick, JJ.). Thus, this court's independence as a co-equal branch of government was never in jeopardy. Whether an agreement that was consistent with separation of powers principles could be reached with the IBEW was not a given. But I believed then, as I do now, that this court should at least try to reach agreement—not because we know what is best for court reporters, and certainly not because of perceived political coercion. Rather, we should try because it is the right thing to do.

As revealed in a survey that this court, itself, commissioned, an overwhelming majority of the court reporters working in Cook County expressed a desire for union membership. This came as no surprise because Cook County court reporters work with numerous other wage earners who already enjoy the benefits of union membership: court clerks, probation officers, deputy sheriffs, police officers, and public defenders. Additionally, I note that Cook County court reporters are part of one of the largest unified court systems in the world. Their workload—in quality and quantity—is impressive. They are entitled to have their voice heard.

If the Cook County court reporters' desire for union membership might be realized without this court surrendering its authority to the legislative or executive branches, why shouldn't we begin the process? Whether our efforts would meet with success, we do not know. Regrettably, however, we will never know. By vacating

the July 1, 2004, order, the court has closed the door to unionization. I, for one, was and am willing to walk through that door to give the process a chance.

I dissent.

CHIEF JUSTICE McMORROW and JUSTICE KILBRIDE join in this dissent.